22 So.3d 734 (2009)
STATE of Florida, Appellant,
v.
Stuart SIMONS, Appellee.
No. 1D08-1611.
District Court of Appeal of Florida, First District.
November 13, 2009.
Bill McCollum, Attorney General, and Joshua R. Heller, Assistant Attorney General, *735 Office of the Attorney General, Tallahassee; Sydney L. Taylor, Assistant State Attorney, Office of The State Attorney, Pensacola, for Appellant.
Eric D. Stevenson of David Lee Sellers, P.A., Pensacola, for Appellee.
PADOVANO, J.
We hold that the trial court had authority to dismiss the criminal charges against the defendant in this case as a remedy for the state's refusal to comply with a settlement agreement. The record does not reveal any breach of the agreement on the defendant's part or any justification for the state's refusal to comply. For these reasons, we affirm the order of dismissal.
The defendant, Stuart Simons, was accused of three criminal offenses: theft of a trade secret, taking and disclosing trade secrets, and grand theft. The state alleged that he had appropriated a quilting machine and computerized business records belonging to the alleged victim, who was then the defendant's employer. The quilting machine was manufactured from a proprietary design owned by the victim, and the business records included supplier lists, customer lists, and other business information alleged to be trade secrets. At the time these criminal charges were filed, the defendant and the victim were engaged in civil litigation over the same controversy.
The parties entered into an agreement for a full settlement of the criminal case, as well as a related civil case. They agreed that the defendant would be admitted to the pretrial intervention program on the charge of disclosing a trade secret, that the two other charges would be dismissed, and that the defendant would make restitution to the victim in the amount of $4,500.00. As a part of the agreement, the victim agreed to release the defendant from civil liability and to dismiss the civil suit. The agreement was reduced to writing and signed by the assistant state attorney, the defendant's lawyer, the defendant, the victim, and the victim's lawyer in the civil case.
The trial judge approved the agreement and incorporated it into an order directing the parties to comply. A short time later, the defendant sent the victim a restitution check in the amount of $4,500.00. With the restitution in hand, the victim attempted to back out of the settlement by refusing to sign the consent form for the defendant's admission to the pretrial intervention program.
This abrupt change in position prompted the defendant to file a motion to enforce the settlement agreement. The prosecutor opposed the motion but did not offer any evidence or argument to excuse the victim's noncompliance. At one point in the hearing, the prosecutor suggested that after the agreement had been signed, the defendant committed an act that "could be construed as a criminal offense." This rather speculative remark had something to do with the fact that the defendant had attended a trade show in another state, but it is not apparent from the record why this would have been unlawful. The prosecutor offered no evidence or explanation.
The trial judge entered an order granting the defendant's motion to enforce the settlement agreement and allowed the state two weeks to nolle pros the charges in the information. When it became apparent that the state would not enter a nolle pros, the trial judge entered an order dismissing the case. The state filed a timely appeal to this court to seek review of the order.
The state argues that the agreement was not enforceable because the trial judge had no authority to compel the prosecutor to place the defendant in a pretrial *736 intervention program. It is correct as a general principle that prosecutors have sole discretion to admit a defendant to pretrial intervention, see Batista v. State, 951 So.2d 1008 (Fla. 4th DCA 2007); State v. Board, 565 So.2d 880 (Fla. 5th DCA 1990), but the trial judge in this case did not order the state to enroll the defendant in the program. Pretrial intervention was merely one part of a comprehensive settlement agreement that contained many other provisions. The judge directed the state to comply with the agreement it had made with the defendant or to suffer a dismissal of the case.
This decision did not encroach on the prosecutor's discretion. The entire agreement was not voidable at the option of the prosecutor merely because it contained a pretrial intervention agreement among its terms. If that were the case, the settlement agreement would be nothing more than a set of illusory promises. The agreement would be enforceable by the state and the victim but not by the defendant.
Reduced to its essence, the state's argument in this case is: (1) the prosecution has a right to decide whether a defendant may enter or remain in a pretrial intervention program; (2) the defendant was the one who breached the settlement in this case because he did not complete the pretrial intervention agreement; and (3) the defendant's breach justified the state's failure to comply with the settlement agreement. This is a circular argument. The only reason the defendant did not enroll in the pretrial intervention program is that he was denied enrollment by the state. There was no real breach of the agreement by the defendant and therefore no justification for the state's refusal to honor it.
It is significant that the state attempted to withdraw from the settlement agreement after the defendant had partly performed the agreement by making restitution. If that conduct is acceptable, the promise of pretrial intervention could be used as a device to collect restitution and could then be withdrawn once the restitution is paid. This possibility is particularly troubling in a case like this one, which is closely related to a civil dispute between the defendant and the alleged victim. It is not fair to allow the alleged victim to withdraw his agreement in the criminal case after he has successfully employed the threat of prosecution to collect the money that was at issue in the civil case.
The trial judge did not break any new ground by enforcing the agreement the parties made in this case. To the contrary, it is a settled principle of criminal procedure that, if the government fails to honor a plea agreement, the court may either enforce the agreement or allow the defendant to withdraw the plea. See Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); Tillman v. State, 522 So.2d 14 (Fla.1988); Spencer v. State, 623 So.2d 1211 (Fla. 4th DCA 1993); State v. Borrego, 445 So.2d 666 (Fla. 3d DCA 1984); Barker v. State, 259 So.2d 200 (Fla. 2d DCA 1972). As the Supreme Court explained in Santobello, the appropriate remedy in a given case is within the discretion of the trial judge.
In some situations it may be proper to allow the defendant to withdraw the plea, but in others the only fair remedy is to enforce the agreement. For example, Florida courts have held that specific performance is a proper remedy if the defendant has partly performed the agreement, see Williams v. State, 341 So.2d 214 (Fla. 2d DCA 1976) (the state breached its promise after the defendant had assisted the police), or if withdrawal of the plea would deprive the defendant of the benefit of the bargain, see Buffa v. State, 641 *737 So.2d 474 (Fla. 3d DCA 1994) (the state breached its promise to recommend a more lenient sentence). As these cases illustrate, justice is not always served merely by allowing the defendant to withdraw the plea and start over.
The power to enforce an agreement between the prosecution and defense applies not only to plea agreements, but also to settlement agreements that do not require the defendant to enter a plea. See State v. Davis, 188 So.2d 24 (Fla. 2d DCA 1966); Butler v. State, 228 So.2d 421 (Fla. 4th DCA 1969). The underlying principle is the same. When the parties agree to settle a case they should be bound by their agreement. The incentive to settle a case by plea bargaining or by an agreement not requiring a plea would quickly disappear if one party could renege on an agreement without any consequence.
On the facts of this case, we support the trial judge's decision to enforce the agreement. The defendant had partially complied by making restitution and he was prepared to comply with all of his other obligations. He was prevented from doing so only because the victim backed out of the agreement without justification.
Affirmed.
ROBERTS, J., concurs; HAWKES, C.J., dissents with opinion.
HAWKES, C.J., dissenting.
I respectfully dissent. The majority seems to find two aspects of this case so significant as to trigger a special limitation on the state's discretion involving pretrial intervention (PTI). First, the majority emphasizes there was a "settlement agreement" in which the state agreed to offer the defendant PTI. Second, the majority emphasizes that through this "settlement agreement," the criminal case against Simons was inexorably tied to the simultaneous civil proceeding. The crux of the majority's opinion is that once the state signs a written offer to a criminal defendant that includes PTI, it is irrevocably bound to allow the defendant to enter the PTI program, even if the offer is withdrawn before the defendant's enrollment. The majority misconstrues the governing statute and the prosecutor's discretion in regards to PTI.
PTI is a grant of prosecutorial grace as it serves as an alternative to criminal prosecution. See Cleveland v. State, 417 So.2d 653, 654 (Fla.1982); S.K. v. State, 881 So.2d 1209, 1212 (Fla. 5th DCA 2004). It is governed by section 948.08, Florida Statutes (2007), which gives the state complete discretion to administer the program. Whenever it is offered  and indeed it must always be offered before it can be accepted  the State is giving the defendant an opportunity to resolve the case without a criminal conviction. Thus, every case resolved through PTI has an offer and an acceptance, and therefore involves a "settlement agreement," regardless of whether the offer or acceptance is reduced to writing. The majority's insistence that this case is different because the offer was called a "settlement agreement," therefore resulting in special limitations on the state, is contrary to the statute. Written offers, whether named "settlement agreements," "offers," or anything else, that involve PTI are all subject to the same statutory rules. The nomenclature chosen by the parties does not amend the statute or deprive the state of its prosecutorial discretion.
The question thus becomes whether the state had the statutory authority under section 948.08 to withdraw its offer.[1] Section *738 948.08 grants the state broad discretion to withdraw an offer of PTI under almost any circumstances, especially in a case such as this one. The majority's decision to strip the state of that discretion is flawed. There are three reasons why.
First, the majority emphasizes that the state cannot withdraw its offer because the defendant had partially performed under the settlement agreement. The majority finds partial performance because the defendant offered to pay the $4,500 in restitution he owed to the victim. There are two problems with this premise.
Problem one is that any offer of payment made by the defendant was premature. The majority seeks to bind the state to the settlement agreement, but they do not choose to hold the defendant to the same strict compliance. The pertinent portion of the settlement agreement would have required the defendant to pay "$4,500 restitution to Martelli Enterprises . . . at a rate established by PTI." (emphasis added). In other words, the settlement agreement or offer stated that restitution would not be paid until after the defendant successfully enrolled in PTI. How the restitution payments were to be made during PTI would be incorporated into the PTI agreement. The defendant never enrolled in PTI. Therefore, his offer of the restitution check was not "partial performance." The majority is using the defendant's premature, unilateral actions to bind the state outside the terms of the agreement.
Problem two with the majority's premise that partial performance triggers immutable rights for the defendant is that no performance ever occurred. Although the defendant offered to pay restitution by tendering the restitution check, the victim chose not to cash the check and allowed it to expire. Because the check was never cashed, restitution was never paid. Since restitution was never paid, there cannot be partial performance.
Second, the majority justifies its decision to deprive the state of discretion by arguing that, in the future, the state might take advantage of criminal defendants by offering PTI, getting restitution paid (making victims whole), and then withdrawing the PTI offer. This is absurd. Regardless of whether the defendant pled guilty, was convicted, or actively enrolled in PTI, he still would have been required to reimburse the $4,500 he criminally deprived the victim of. The majority's concern that the state's conduct here is akin to "swindling" the defendant is not supported by the record.
Third, and perhaps most important, even assuming the defendant had partially performed under the settlement agreement, and even if the state's decision to void the agreement by withdrawing the offer was unfair, the state has the statutory authority to withdraw its offer of PTI at any time. Section 948.08(4) permits the state to resume prosecution "at any time[,]" even after PTI has been entered into, if it (the state) finds: (1) "the offender is not fulfilling his or her obligations under the plan" or (2) "public interest so requires." Under section 948.08(4), the state alone has the discretion to decide if the "public interest" warrants the withdrawal of a PTI offer. See Batista v. State, 951 So.2d 1008, 1009 (Fla. 4th DCA 2007) (finding "the statute explicitly recognizes the [S]tate's discretion . . . to admit *739 or to terminate PTI"); Virgo v. State, 675 So.2d 994 (Fla. 3d DCA 1996) (finding the state has "non-reviewable" discretion to terminate a defendant's PTI at any time, even after the program has begun); State v. Rubel, 647 So.2d 995, 996 (Fla. 2d DCA 1994) (finding the state's termination of a defendant's PTI is a prosecutorial decision to be kept free from judicial interference); State v. Board, 565 So.2d 880, 881 (Fla. 5th DCA 1990) (finding "the statute creating the PTI program places no limitations on the state's discretion to reinstate prosecution after PTI has been approved"). Each of the other District Courts of Appeal recognize the state's sole discretion to withdraw PTI offers or to terminate PTI. The statute places no limits on situations where the PTI offer is in writing and restitution is part of the offer. In section 948.08(4), the legislature gave complete discretion to the state attorney and denied the courts any role in PTI decisions.
The majority skirts the authority of section 948.08  indeed it does not even mention the statute  by arguing general principles of contract law and "fairness." But statutes trump principles of contract law and "fairness." When the defendant agreed to the settlement agreement, he agreed to the terms of the statute. To allow the defendant to rewrite the settlement agreement by prematurely offering to pay restitution, and then to allow the defendant's unilateral act to rewrite section 948.08, is the true unfairness.
For the foregoing reasons, I would reverse.
NOTES
[1] I am compelled to point out that this is not a case where the defendant had actually entered or completed PTI only to have the state decide to resume prosecution. The offer of PTI was withdrawn before enrollment and after the defendant engaged in some out-of-state conduct that raised serious concerns for the victim and the state. The timeline is revealing. The defendant had a chance for prosecutorial grace (i.e. PTI), engaged in questionable  perhaps criminal  behavior out-of-state, and as a consequence the PTI offer was withdrawn. All of this is consistent with the statute and prosecutorial discretion.